May it please the Court, my name is Joseph Schlesinger. I'm here to argue on behalf of jurisdiction for Mr. Duncan. This case is about a capital defendant who, despite substantial expert opinion evidence that his trial decisions were the product of mental disease or defect, was permitted by the district court to be the architect of his own demise. Let me cut to where I see this case and maybe you, an opposing counsel, can tell me if and where my thinking goes wrong here. Excuse me. Under our precedent, a standby counsel like you can raise the issue of competence but no other on appeal. Excuse me. And if the district court were to hold a hearing and determine that his waiver of appeal was competent, then it seems like we could decide the jurisdictional issue that's before us accurately. And if the court found that he wasn't competent, then it could go on to consider whether he had been competent even to represent himself in other respects. And I just don't see how we can get past that initial step. I mean, how can we decide if he was competent or not? I agree. I'm not making myself very clear, but it seems to me that the inevitable result initially has to be for a finder of fact to look at this situation and say he was competent to waive the appeal, in which case probably he did so. Or at least we would have that before us. And if not, I mean, we have a different scenario. You're making yourself very clear, Your Honor. That's exactly where I was planning to take the argument after a few introductory remarks. We'll skip the brief introduction and go right to where Your Honor is asking about. We contend that the failure of the district court to hold an evidentiary hearing is a violation of Pate v. Robinson. Under Pate, there's a procedural due process right not to be trialed while there is a substantial doubt before the court as to competency. I think we're talking about two different things. Because if he was competent to waive the appeal, we might never get to whether he was competent to represent himself at trial. Because there are two different time periods, two different decisions. And so you're talking about whether he was competent to represent himself at trial. And I'm not even there yet, I guess, in my thinking. I'm not trying to mislead, Your Honor. The only reason I was referring to it that way is that's when the motion to have a competency determination was made. And Judge Lodge referred back to his disposition of that motion at the time of the appellate waiver. And essentially said, I'm finding him competent to waive the appeal because I found him competent earlier in the case. And earlier in the case is when the motion was made and the evidence was presented, the reports, the defense reports were presented to the court. We have a doubt about competency here, Your Honor. We need a hearing. I just want to focus on something slightly different than Judge Graber's question. As I look at it, Mason, Exrell, Marston versus Vasquez seems to permit standby counsel to challenge the mental competency of a death defense of deciding whether the district court erred by refusing to hold a hearing on the defendant's competency. Could you comment on that, please? I take it the way that Your Honor phrased the question with the emphasis on the sole purpose. I may be missing something. Here's my concern. Judge Graber has very properly raised this issue. Basically, do we have any jurisdiction to even consider this because the district court found him as competent, found that he waived the appeal on a competent basis? What I'm struggling with, though, it seems like there is a case, and I just cited it to you, that suggests that where there is a death sentence prisoner, that it's okay for standby counsel, even over the opposition of the person involved, to question on appeal whether there should have been a competency hearing. In other words, this is actually favorable to your position. I'm wondering if you will comment on that case. That seems to me to be the only hook that you've got here. I don't know whether it's really a hook or not, but I want to know what you think about it and why. I agree with that interpretation, Your Honor, and we cited that in our opening brief. Trial counsel, standby trial counsel who had been discharged were not supposed to just stand idly by when a competency hearing was denied and the client waived the appeal or purported to waive the appeal, was found to have waived the appeal. They did exactly what they were supposed to do under Mason v. Vasquez, and that's to appeal, and I'm quoting, to appeal the court's decision of mental competence, which would otherwise remain unreviewed. Here's the reason why I'm separating out the issue of mental competency to represent himself and competency to waive the appeal. It's at least theoretically possible that, particularly under Edwards now, that someone is competent later in time to make a single decision, which is do I want to pursue this further or not, who might not have been competent to represent himself at trial, or vice versa, someone who was doing well, you know, might have gotten worse and not be competent. So they seem like two different issues to me, and if the appeal was validly waived because he was competent to make that decision, would we ever even get to the question of whether there was error that predated that? No, I understand that, Your Honor. We have to find, and I think Judge Smith was alluding to this as well, we have to find that there's jurisdiction to do, what should I call it, an underlying appeal, and the only way we get to that is the Mason appeal. What's the outcome? Mason gets us to the appellate waiver. That's what it does. Correct. You could almost look at it as if there were two companions. Okay, so let's assume that we have jurisdiction, which I think we do, to look at the appellate waiver. And he, if he's competent, has the ability to waive any constitutional appeal, including an unconstitutional determination that he was competent to represent himself pro se. I think it's very hard. I think where Judge Graber is going, and that's why I'm trying to focus a little here, is if he has decided under a Mason case that we look to make sure that he was competent to give up all the constitutional errors that may have occurred during the court preceding the appellate waiver, and we conclude that he was competent, we can't fault the district court's finding at that point, then even though he, your Pate v. Robinson argument and his reference back to all of that would fail. Now, I understand you to be arguing that the reasonableness of the district court's determination of the appellate waiver is flawed because of the prior determination with respect to pro se representation. So you can't disaggregate them. Assuming that we disagreed with you on that, then we would not independently be going back. For example, just to make the point, there is a passage of time in which the district court had the opportunity to observe, as he talks about, the defendant. Maybe it was a borderline call on pro se, but now he's had the advantage of seeing your client represent himself throughout. And he goes through this extensive colloquy on the appeal waiver, and he concludes, based on circumstances at that point, that yes, I've checked him six ways this Sunday, and unless that determination is flawed, then we don't go back and revisit the original. Ben, focus strictly on that, your Honor. I think it clearly is flawed. As your Honor just posed it, Judge Lodge was basing a lot, far too much, on his personal observations of Mr. Duncan. Judge Lodge is not a mental health professional, does not have access to confidential communication with the defendant in protracted interviews. And case law talks about this. This is why we have Pate v. Robinson, because it was quite common for trial judges to say, I've seen him, I've interacted with him, he looks fine to me. And that's a very grave error. What happens, Judge Fischer made the point that we've got the initial pro se representation, then we've got an appeal. In this case, you had three different examining experts who said that he, Mr. Duncan, was not competent to represent himself. That didn't go forward. He represented himself. Now we get to the appeal situation. There's no request, I gather, for a new competency evaluation. What role, if any, should the opinion of the three examining experts who said at the trial level, this guy is not competent to represent himself, what role should that play on his competence to appeal? It's huge, Your Honor. It's enormous. Those didn't just go away. Now there may not have been a renewed request. And, of course, counsel had been told not to file things that Mr. Duncan didn't want filed. So counsel wouldn't have been able to do that. But Judge Lodge understood we were talking about the same thing. He said, I'm basing this partly on my prior decision not to hold a hearing. So is there kind of like a continuing objection, if you will, on the part of counsel who brought forward these three experts saying he was not confident to represent himself? Yes, Your Honor. And not only that, but underpaid. And that's competency at any critical stage. And certainly waiving an appeal would be a critical stage. I don't know if the answer to this question can perhaps help me. Did any of these experts speak of an appeal or they were focused at that point strictly on the trial? They were focused on the trial. But I was just going to ask you whether there's any precedent that deals directly as distinct from sort of setting general principles with the requirement for a hearing where there are conflicting expert witnesses of statute, which we have in this case. There are three on the defense side, two appointed by the court. All of them seem to be extraordinarily well qualified. The defense side said delusional, can't think rationally, can't waive the right to counsel, can't represent himself. And the other two said, well, you know, he's weird or unusual, idiosyncratic, but he can do this. Although later on they said, because he won't talk to us, we can't be sure about this to a reasonable degree of medical certainty. So one of the reports Judge Walsh relied on as more persuasive was somewhat equivocal about the appeal. Well, I guess what I'm wondering is whether there's any precedent that deals directly with the need for a live hearing when there's extensive written presentation. There were extensive reports here. They're quite complete. The PET scans and the MRIs, I mean, all of them. I think I'm referring to things that are under seal, and I don't know if that's. I don't think that's accurate. But they're very, very complete. But on the other hand, a hearing is a hearing, and there wasn't a hearing. Absolutely, Your Honor. It may be one thing for Judge Walsh to say, I've read the defense reports, and I'm not persuaded. But that's why we have hearings. We put the witnesses on. We subject them to the crucible of cross-examination. And judges sometimes change their minds because of that. And moreover, as Your Honor started the questioning, then this Court would have a fully developed factual record to make the determination it needs to make under Gilmore v.  In Gilmore, there was a competency hearing, maybe more than one, right? Gilmore and Mason, too, Your Honor. I mentioned that earlier. There was a protracted hearing in Mason where the Ninth Circuit reviewed and allowed the waiver as a result of that. Here, it's all guesswork. And Judge Lodge, frankly, his order is manifestly guesswork. He says, I'm not sure that the defense experts used the right standard, because they were talking about competency to represent himself, and Judge Lodge thought they ought to be talking about competency to stand trial. And we just sort of had a similar dialogue and disagreement. Let me ask you this. An evidentiary hearing, of course, has more due process to it and the like. But at the end of the day, you still have the same district judge who is making an evaluation. And I'm looking now. I don't know what it is in the ER, but this is out of the colloquy about the appeal. Judge Lodge says, do you want to appeal this matter or do you not? Mr. Duncan, I do not. And just a little bit here, the court says, the court previously on this competency issue ordered two separate competency evaluations and considered several other opinions of experts submitted by the defense in making its initial determination that you were competent in this matter. Now, I know he goes on and talks more about the appeal, but I guess my question to you is, what is gained by having a competency hearing before Judge Lodge, who took into account all the same materials that he would have heard, at least in written form, that he would ultimately hear in a competency hearing? Is there anything gained? Well, if you're talking about the end game, Your Honor. Yeah, that's basically what I'm saying is, does it really do anything other than? I don't know if Judge Lodge would change his mind, but I know that there would be answers to the things that are troubling, that should be troubling all of us. The concern, did Dr. Marikangas and Dr. Woods apply the right standard or not? Somebody needs to bring them in and ask them that. So you're saying there was really no cross-examination of the experts and without the benefit of that, that even though Judge Lodge had the benefit of these things, it was on a non-critical basis. Right. And, Dr. Lodge, what do you mean not a reasonable degree of medical certainty? Dr. Engel, you said his profile is similar to that of a psychotic person. That's one of the things that's, at least at the portion that Judge Smith was just quoting from at that time, with counsel about their concern about FBI manipulation of the defendant, you know, bringing them ice cream and that kind of thing. Is that something that you're contending as part of the evidence you're hearing, or is it really focused on the experts? Well, focused on the experts, Your Honor, although I think there would also be some other issues potentially about what, in fact, Mr. Duncan does want to do, as we've seen now. There may be questions about that. I think there are questions about what he was really saying at the time, because as Judge Smith just mentioned, he said, no, I don't want to appeal when asked point blank by Judge Lodge. That was after he kept saying, do what you want to do, leave me out of it. And Judge Lodge said, well, I'm not going to accept that as an answer, yes or no. He says no, and then he immediately goes back. I want to explain what I meant. Do this without me. If the system wants an appeal, go appeal, but don't ask me to be the one to decide. But I think I've probably rambled a little bit off your question, Your Honor. I believe you've answered the question. And there was a question, I think, hanging from the very first minute from you, Judge Graber, about the difference between Reese versus Payton, and Payton and Trope and Dusky. Your Honor was suggesting that they may not be the same. In some instances, one may be higher. And the point I particularly wanted to respond to is he might be competent to make this particular decision, even though experts thought he wasn't competent overall. Well, after Edwards, it seems like the competency to represent oneself is maybe a higher burden than some other pieces of the puzzle. We've said that in Thompson. So that's what leads me to think there might be a different standard. But the Edwards reports were written before Edwards was out. They weren't addressing that. And we sort of got chasing our tails a little bit somewhere along the line, and this is what troubled Judge Lodge, is they said not competent to represent himself. And he said, oh, no, I think you're supposed to be talking about competent to stand trial. It's pretty clear that the experts were just speaking a little colloquially or a common understanding of what the exam was to be about. But the point I wanted to make, Judge Graber, is as we argued in our brief, we think there's a very powerful reason to think that even if he were Dropdesky-competent, he was not Reese-competent, and Judge Lodge should have taken that into consideration, because Dropdesky talks about one's general capabilities. Are they capable of a rational understanding and a factual understanding? Are they capable of working with counsel? And the court appointed experts said, sure, he's got lots of capabilities. But Reese asked a somewhat different question. It says, is this decision to waive the appeal the product of a mental illness? And I think that's all over the hearing transcript and the letters or the affidavit that Mr. Duncan wrote the court and what the experts said that he told them. He has this delusional belief that his trial, and not his execution, but his trial would be an awakening for society, and society would get the supernatural enlightenment through his nonresistance and its own decision to kill or not kill. And the government has analogized that to some philosophical viewpoints about nonresistance. But the point isn't so much are there other people that have a somewhat similar view. It's what is Mr. Duncan's thought process going into this? And the experts say it's disordered. He's delusional. He thinks he hears voices and thoughts inserted into his head. That may lead him to say something sort of mainstream. It says there were a lot of people who thought it was going to snow last night, and they happened to be right. And some people came to that conclusion because they watched news reports. Some people may have felt it in their bones. And we think, well, that's maybe a little unusual, but not impossible. But if I say I'm watching the television and I'm getting secret messages that nobody else can see or understand, and that's why I know it's going to snow, that's a very different situation. Although the bottom line statement, it's going to snow tonight, seems pretty reasonable. I guess what troubles me, I mean, I read this horrendous story and the things he wrote and the things that he said. He talks a lot about religion and so on. But at the end of the day, people can say all kinds of things that most people would think were quite irrational and quite off base, and yet they have been found, after appeals and so on, to be competent to perform the limited task involved. Now, in this case, you've got two levels. You've got his role as representing himself at trial. Then you've got the question of appeal, which is the one we're essentially dealing with right now, although if we go backwards. I'm still concerned about the fact that we're really dealing with the same judge who is ultimately going to make the decision. I mean, no disrespect to Judge Lodge at all. I'm just talking about a generic judge in this sense. It seems to me your comment is that you've got to have an evidentiary hearing because otherwise you can't have cross-examination. There are things that the judge may not have been aware of that may or may not have helped him make a decision. The judge himself, in his comments, seems to say, as I'm reading it, look, I know this guy. I've read what he's said. I hear what he's done. I've looked at the evaluation of these people. And in my opinion, he is able to perform this task specifically to represent himself. And then what we just talked about a minute ago, I've asked him specifically whether he wants to appeal. I've listened to what he's said. And now based upon that and all these other things, because he talks about them. It's not like some of the things we get into where you have to cite these magic things. He goes through and he talks about all the stuff he's relied upon, and then he makes his decision. Don't we ultimately get back to the same thing all over again and the same people and the same discussion? I don't know, Your Honor. I think the reason evidentiary hearings are required is sometimes things come out a lot differently at the end of the hearing than it looked like on the police report or the information. So, in effect, you're saying that this is a structural defect. Oh, absolutely. We have to order from your perspective. We have to send this back to have an evidentiary hearing. We cannot rely upon what Judge Lodge said, even if he spent a year outlining all the things he considered and his thought processes, that doesn't matter. Is that your position? Well, it's a little different. A long time, a long time. Absolutely, Your Honor, because Pate says that there's a substantial question, and Miles says it can be raised simply by experts notwithstanding the court's observations that the defendant seems normal. And if you're right, would we be sending this back for the purpose of deciding whether he had the right to appeal or would we be sending it back to give him a new trial, see whether he was competent to represent himself at trial? Well, I think it is somewhat difficult to split off those issues, Your Honor, and that's why we ask in the many motions we made at the beginning of the case, and I believe we repeated it in the brief, these are really closely bound issues, and it is somewhat difficult. We have to decide that, and I'm interested in your perspective. The government obviously will have a perspective as well. But if we agree with you that this is a structural error, is it a structural error insofar as the only thing about which under Mason we might have jurisdiction on at this point, which is did he have the right to appeal? If he didn't appeal, we don't have any jurisdiction to decide anything. Do we even have the right at this stage to go back and say you've got to go back and have an evidentiary hearing and a new trial if he's found competent? Well, in terms of appellate procedure, I mean, one way the court could come to that result, in fact, the Mason appeal is granted, and that entails a structural error at the defendant appeal level, which we just determined has to occur because Mr. Duncan, because of the merit of the Mason appeal, is no longer the master of his own destiny. Well, it seems to me that we would never in this proceeding get to the merits of any issues in the trial beyond his competence. Because if he was competent, then he validly waived his right to appeal and we're done. If he was not competent all along, then he should get a new trial. But I don't see how we ever get to that middle ground of saying, okay, now you get to bring in a whole bunch of other substantive issues about his trial. I don't see a path to do that. I think that may be correct, Your Honor. Although I don't want it to, although that's not the main focus of what we're talking about, I don't want the court to forget that we have other challenges. Well, I know you do, but I don't see how we could ever get to them. No, no, I don't mean aside from the waiver. If you didn't have a clear and unequivocal waiver, for instance, it still wouldn't be an appellate waiver. We might send it back for another hearing on waiver rather than competency. But our position in the brief was when Mr. Duncan says, I don't care, that's not affirmatively waiving the appeal. Now, we might have to, or the court might have to decide. I think you and I are talking about slightly different things. I guess I was talking about whatever errors, if any, may have been committed in the course of the trial with hearsay or all that kind of stuff. I can see no way that we would ever get in this proceeding to those issues. Because if he's competent, we're done. If he's not competent, he gets to start over. So I don't really see. I think that's right, Your Honor. And I didn't, by trying to clarify some points about what our issues about the waiver were, I didn't mean to. You were saying that there was a, other than if he was competent, but there was a defective waiver. Correct, Your Honor. That would be something we'd have to address. You have very little time left if you'd like to reserve some for rebuttal. I would, Your Honor. Thank you. May it please the Court. I'm Serena Case Hargrove for the United States. And with me is U.S. Attorney Wendy Olson. We would like to divide our time equally. I will address the first question posed by the Court, whether the Court should dismiss for lack of jurisdiction. And Ms. Olson will address the second question. She was trial counsel below. And she will discuss the District Court's competency determination. Well, this is kind of not terribly helpful because to me the two issues kind of intersect. And what I'm interested in from a government is the same thing I was interested in from the defense. The standard for requiring a competency hearing seems to be both by statute and case law to be relatively a low bar to have a hearing. And it seems to me that what the District Court here essentially did was akin to summary judgment. And just say, well, I've got the paperwork and my own experience and I'm going to go ahead and make a decision. But I don't really understand from both the statute and the cases how that is a permissible way to resolve factual disputes when there is doubt with respect to competency as there was here. So why isn't the required outcome here a remand for a true hearing? Your Honor, if the Court can reach that, which I'll argue it cannot. But if it can, the standard is whether a reasonable jurist would have a genuine doubt. Well, I think I'm a reasonable jurist and I have a genuine doubt. And, you know, maybe I'm not reasonable. I know it's supposed to be an objective standard. But there are five experts, three hired by the defense who say this person is irrational, incompetent, can't represent himself, can't validly waive anything. And two who say he's weird, but he can do it. Now, that seems like a classic factual dispute where there's significant evidence of incompetency. I just don't see how in the face of those three reports, which we have in front of us, a reasonable jurist wouldn't experience some doubt. Your Honor, I would say two things. First, I would commend the Veatch case to your attention. And that was a habeas case in which a very similar decision not to hold a competency hearing was made by the district court judge. And under an extremely searching review, which is what would happen on habeas, it's what happens when no competency hearing was held, this Court held that the district court's decision not to hold a hearing was reasonable. And in that case as well, there were expert disagreements. What's the case again? It's Veatch, Your Honor, United States v. Spell, please. V-E-A-T-C-H. V-E-A-T-C-H, yes. V-E-A-T. We cite it in our brief, and I can give you the site as well. No, that's okay. That's fine. I just wanted to make sure I got the spelling. But the other thing, Your Honor, is that Judge Lodge had significantly more than just those expert opinions beforehand. Before you go down that road, just to focus the responses, we've been making clear to the Defendant's Council, analytically there are two competency determinations here. You said you were going to talk about jurisdiction. Is it the government's position that if he didn't file an appeal on his own, we will never be able to determine whether his waiver of appeal was competently made? Yes, Your Honor. So you're willing, the government's willing to say that a guy who was mistakenly found to be competent by the district court, I'm not saying that's the case here. That's the issue here, that someone who has mistakenly been found to waive his right to counsel and has waived his right to appeal, that that's the end of the story. Because sick as he may be, he is not the one who has brought the case, and Mason doesn't apply. Not precisely, Your Honor. I hope not. Certainly, Standby Council could raise concerns at that stage about the defendant's competency. Well, that's what they've done. Well, Your Honor, actually no, respectfully no. Standby Council did not raise concerns regarding the defendant's competency to waive appeal. Well, they raised it very vociferously at the beginning and were told by Judge Lodge, I'm listening to him, he's competent, he's made that determination. Yes, Judge Fisher, they raised it during the sentencing proceedings. Yes. But at the point at which the notice of appeal was to be filed, they simply filed a notice of appeal against the defendant's wishes. At the hearing that the judge held, because the defendant sent the judge a letter very eloquently explaining that any appeal that's on S.E.R. 4, any appeal, notice of appeal that was filed on his behalf, was contrary to his wishes. Because the judge received that letter from the defendant, but also had this notice of appeal that purported to be by the defendant, the judge held a hearing. At that hearing, Standby Council never raised a concern regarding the defendant's competency to waive appeal. Certainly they had raised it, we agree, they had raised it at the So if I understand your argument, it is the following. Theoretically under Mason, Standby Council could raise the issue of competency to waive appeal just as they could raise the issue of competency to stand trial or to represent oneself. But because they didn't say so to the district court, then that is kind of a second waiver by Standby Council of the Mason issue. That's what you're saying? No, Your Honor, because Mason is, it's our position that Mason does not support standing for Standby Council to raise a notice of appeal. Our position, what I was trying to explain. So you're saying that Mason applies only to competency to represent oneself at trial, but that Standby Council, that we should not extend Mason to allow Standby Council to question competency to waive the right to appeal? No, Your Honor. Mason stands for the principle that apparently when there is no further avenue for review and a district court is considering a petitioner's habeas petition, because Mason was a habeas case, the petitioner wished to, and the petitioner was not represented, didn't represent himself. He was represented by Marson, an attorney, and his attorney contested his competency at the point at which he wanted to withdraw his habeas petition. Entirely different situation than the decision to file a direct appeal, which is made by, which is the defendant's own decision. Well, so now I'm even more confused. Is it your position that we can't apply Mason because it was a habeas and this is a direct appeal and that you can't cross that bridge? Yes, that's part of it. So the fact that it says that, in Mason, that attorney Marson is a participant for Mason in the proceedings is also entitled to appeal the court's decision of a mental competence, which would otherwise remain unreviewed in a death penalty case, does not apply in this case. That it's okay in the government's view for an incompetent defendant to not be able to get review of his death penalty because this incompetent defendant waived his appeal? Your Honor, I think it would be a very difficult question if counsel had raised the defendant's competence to waive appeal. Okay, now you're backtracking again. Take a position. Is it the government's position? We'll decide whether or not it's waived, but it is your position that Mason does not apply at all, regardless of whether they waived it. So you would let, the government would let, somebody who is at risk of having had a faulty decision in the trial court on his determination of competency be executed and have that, because he waived appeal, and that would be unreviewed by any appellate court. Unreviewed, undirected appeal by any appellate court. Keep in mind, Your Honor, there is still review available, and that is what distinguishes the situation this court is in so clearly from the situation the Mason court is in. So you think that in the interest of, we have to wait for 2255, so that seems to be. Is that your break? Yes, Your Honor. It is, but it just seems very wasteful of judicial resources, and I guess I don't really understand why the principles in Mason wouldn't still apply. But let me ask you the following question, because you said, well, if they'd only raised it. The court raised it on its own during this hearing. Yes, Your Honor. And so it is often true that issues don't need to be raised if they're dealt with by the court already. So the district court spent several pages explaining why he thinks that this waiver is correct. Then the standby counsel expressed their reservations about manipulation by the government and that there's a need for a factual inquiry, and they go on to say, we do not believe that the conversation today is a voluntary and intelligent one and a knowing one on his part or of his free will. And so it seems to me, and they go on to say there are serious questions, and they can't stand in the way of a decision by the appellate court whether he was confident. So I guess I'm questioning why that colloquy, even though it was maybe not as perfectly articulated as one would like, doesn't alert the district court that the standby counsel thought there was a problem. Your Honor, you're entirely correct that the district court considered competence. And what I was trying to explain was the difference between the – I was trying to draw the distinction between the appeal issue and whether someone has standing to file a notice of appeal and this competency question. You keep changing what you're saying. It's extremely confusing to me because each time you ask a question, that feels like you're giving a completely different answer that's different than the previous answer. Earlier you said that there's no ability for – well, you had two points. One is Mason doesn't apply because it's a direct appeal. We're leaving that aside for now. And the second thing I heard you just say was standby counsel waived this issue that we're now talking about because they didn't tell the district court that there was a problem with competency at the time the appeal waiver was taken. And so that's what I'm trying to get at now. Is that your position, or do you concede that standby counsel did raise to the district court at the time of the appeal waiver that there remained serious questions about competency? I think I understand where we diverged, and I'm sorry if it's been confusing. What I was trying to say is that standby counsel lacked standing to appeal, but they could – there could be further process before – if they had raised the issue in a different way to the district court, the district court might be able to do something more. What different way would you – so now I hear you saying, okay, yeah, they told the district court there was a problem, but they didn't do it the right way. What would the right way have been? Well, Your Honor, they simply don't have standing as standby counsel who don't represent the defendant to file on his behalf. That's a different question, Your Honor. This goes back, does it not, though, to the competency issue in the first place. I want to change this slightly. It's following up on what Judge Graber just mentioned. The Kaplanite case, I don't know if you're familiar with that. I'm just going to quote a little bit here as context. It said, once there is such evidence from any source, there is a doubt that cannot be dispelled by resort to conflicting evidence. The function of the trial court is to decide whether there is any evidence which, assuming it's truth, raises a reasonable doubt about the defendant's competency, and this is the key here. At any time that such evidence appears, the trial court sui sponte must order an evidentiary hearing on the competency issue. Now this may be a slightly different factual situation. I guess my concern is this. The issue of competency underlies this whole thing. You've been telling Judge Fischer and Judge Graber that the testimony of counsel have no standing to raise any issue, and yet underlying this whole issue is this guy may not be competent. And my colleagues have made the point, so this could conceivably put somebody who was not competent in danger of his life, quite literally in this case, without there ever having been a competency hearing. So in light of capital and just general principles, I guess my question would be, this suggests that the trial court has an obligation sui sponte at this level, I'm interpreting it, at the level of the time of the appeal, to if there's any evidence that casts a doubt on the guy's competency to make the decision, he needs to hold a competency hearing. What's the government's position on that idea? Well, Your Honor, Judge Lodge explained that he saw no evidence. But you had these three experts that said that this guy can't do it. And Your Honor, here I would defer to my colleague, Ms. Olson. Well, let's hear from her, then, because I think that's where a lot of our questions really arise. May it please the Court. I don't know how you make it shorter. Yes, now we can see you. I couldn't even hear myself through the microphone, so I'll put that down. First, Your Honor, Judge Smith, to respond to the Court's question about the Caplani case, and I think actually that part of de Caplani is trying to explain some earlier Ninth Circuit precedent, including Moore v. United States. And that line first appears in Moore. Once there's substantial evidence, the Court has to sui sponte hold a hearing. It doesn't say substantial. It says if there's any evidence, any evidence casting doubt on competency. And it talks about the trial court has a sui sponte obligation to order an evidentiary hearing. So here you have, at least your co-counsel has been making the point, that you have a distinct proceeding here, in effect, separating the trial from the appeal. You're saying, okay, yes, you've got this appeal. You've got these folks here that, yeah, they appealed, but they didn't have the permission of the defendant here to appeal. Therefore, you have no jurisdiction. And yet it gets back to the very point, if the guy's not competent to make the decision to waive the appeal, how do we get there? You've been telling, or your co-colleague has been telling my colleagues, that, in effect, the guy's out of luck. You may have some 2255 rights later on, but in terms of any direct appeal, you're just out of luck. Is that your position? That is the government's position, that on direct appeal, there is no case for controversy, no Article III standing. And for the reasons set out in the first part of our brief, in detail, on direct appeal, we don't believe that the Mason, Exrell, Vasquez, and Marcin case applies. Habeas, we agree that Mason would apply on Habeas. And that, yes, there's no doubt. That would give you a slightly different factual scenario, which I'm not pretending exists here. Let's assume for a moment that in connection with the appeal issue, that Mr. Duncan had suddenly started frothing at the mouth and saying all kinds of things that would suggest that he was a terrible, paranoid schizophrenic and he needed to be restrained and so on. He'd never seen this before. There's never been a hearing. Would he have an obligation at that point to hold a competency hearing regarding his ability to file an appeal? Absolutely. And Judge Lodge, if Judge Lodge had seen that, he absolutely would have had to do that. And I think you're absolutely correct. The bottom line on the law in this circuit is pretty well established. Once a judge experiences bona fide doubt with respect to competency, he, sua sponte, must hold a hearing. Okay. Is it the judge's decision on that, or is it if there's any evidence that's presented that suggests bona fide doubt? It's whether, and I think Deca-Plany, and then that's set out further in Davis-Horst's report, sets out what was really a broader standard, not that any evidence requires him to hold a hearing, because I think in Deca-Plany, ultimately that court says, look, those sentences we said and more, they don't mean exactly that. What they mean is the reasonable judge, or the judge sitting as he was at the time, looking really at all of the circumstances, if then he experiences a bona fide doubt as to competency, he should hold a hearing. So if the judge is used to people frothing at the mouth, it's no problem? Well, if the judge were to see someone frothing at the mouth and decide not to hold a hearing, I would agree that that would be a problem. What's our standard of review? Do we just say, well, is it abuse of discretion, or is it de novo whether a reasonable person in the trial judge's position would have experienced a reasonable doubt as to competence? What is our review there? I think it's the second standard that the court articulated, and that's set out both in Declany and then Davis v. Woodford, the earlier one. So we don't just defer to Judge Wald's decision in that respect. We look at what's in front of him, at least insofar as we can glean it from the bare record. Obviously, we don't have the demeanor and so forth in front of us, but we have the reports of the five experts. But I think it also, the standard says that you have to look at all that the judge had in front of him, and this was a judge who had been interacting with this defendant for more than a year at this time, who had engaged in lengthy colloquies with him at the time that the plea was entered, at the time on April 18th of 2008 when the court first had a hearing with respect to Mr. Duncan's request to represent himself, on July 24th when the court had, excuse me, July 28th had a hearing with respect to whether Mr. Duncan again wanted to represent himself. Well, counsel, we have a situation here that is relatively unusual to me, in that we have three experts who pretty unequivocally say not competent. We have two who say he's really bizarre, but we think he's competent. And we have no suggestion that he's malingering, just that he's not quite weird enough or quite crazy enough to be not competent. And we have a record in which, you know, he says things that, at least to my eye, are pretty odd. So, and again, there's no suggestion anywhere that he's malingering, and Judge Losch doesn't think that he is either. So I guess I have a difficult time seeing why that doesn't raise a doubt about his competence. Well, I think there are several reasons, Your Honor. And as Judge Losch articulated in his order that was issued on July 24th of 2008, and that's at the time he made that critical initial competency determination, that Duncan was competent first to waive his right to counsel. He then, a few days later, had a separate hearing where he interacted with Mr. Duncan again and said that he was competent to waive his right to represent himself. But at that point, Judge Losch, he set out all the things that he relied on in reaching the conclusion that there was no bona fide doubt after Mr. Duncan's competence. And he did, in the course of that, look at those expert opinions, the ones that were submitted by the defense and the ones that were submitted by the court order of evaluation. It's circular because we're supposed to look at that determination. And you're saying at this stage, in fact, in order to determine – well, I'm still not sure what your position is on direct appeal, but okay. So let's assume we could look through to make sure that the appellate waiver – you're acknowledging that the appellate waiver was tied in with his earlier determination. He made – he did. He articulated his reasoning. But if we look at the record and we say objectively and from our view, he should have found bona fide doubt on these facts, then the question would be does – is this appellate waiver valid since they are wrapped together? And if we think that there should have been a hearing so that there is some record to resolve these conflicts and so on and so forth, which is what the bona fide doubt goes, not whether the ultimate conclusion that he was confident, but whether or not it was arrived at with a full hearing record, which there wasn't. There was no cross-examination and so on and so forth. So we have that construct before us. Now we're looking at what we do. You're saying, as I understand it, okay, you can have all of those doubts, judges. You can sit here and say this was a doubtful competency determination on the appellate waiver. It's okay for you to look at the whole record and make that conclusion. But it now has to come up through 2255 because – He waived the appeal. Because he waived his right to appeal. Which is completely circular. Your Honor, there is an appeal here that was timely filed. And the question is whether it has effect to be filed on his behalf or not. A piece of paper called a notice of appeal was filed with this correct case number on behalf of this individual. So if it were authorized, we'd be off to the races. There would be jurisdiction because there's a real case of controversy and all the other jurisdictional prerequisites are met. So the only real question is whether these counsel can represent him to the extent of filing this notice on his behalf because he was incompetent not to. So I guess it all comes back to how do we know? Now, if we were deciding – I guess if there is a doubt about his competence to waive the appeal and if we have jurisdiction to deal with that issue, then isn't the right answer to send it back for a competency hearing? We can't do that here. We can't ask these folks, well, what does this PET scan mean? You know, to the other experts, how can you come to this conclusion when you didn't have this information or that information? Isn't that the right answer? Well, I disagree for two reasons, Your Honor, and I think we may at this point just have to agree to disagree with respect to that first question about whether they can represent him to the extent that he's competent. This defendant repeatedly indicated in a letter to the court in that hearing and in another submission to the court that he did not wish to appeal. So I think the question is, really, do they separately have standing? But that's that circular argument that Judge Graber's raised is because the very point of whether he competently did that gets to the whole idea. Following up on the conversation you've had, though, let's assume for a moment. Let's assume for a moment that we have jurisdiction solely to rule on whether or not there should have been a competency hearing. My question to you is, and I think I ask it to your co-counsel, is if we so conclude, if we conclude we have jurisdiction, is our right here limited to sending this back to Judge Lodge to hold a competency hearing on the issue of whether he authorized an appeal or was confident there was a way of an appeal? Or do we go back to the earlier point and simply say, you know, this whole thing is off the track from the beginning, it didn't hold a competency hearing, along the argument that the other counsel made that it was a structural error and therefore we have to go back to the beginning?  In fact, there was jurisdiction for standby counsel separate from the defendants to file a notice of appeal. And their notice of appeal was in no way limited to the competency issue. They sought to raise everything. That's what their notice of appeal was. But if this court were to decide that for some reason on direct appeal they could file that notice, then I think the remedy is simply to send it back to the district court for the point to determine whether it was competent to waive the right to appeal. And the reason is this. That was a question that the court had asked earlier and I think it got lost in the other things that we weren't agreeing on or communicating clearly on. And that is because it's a separate determination made by the court. And there is a lot that happens between the initial motion to find the defendant incompetent, which was filed in May of 2008 based on some immediate examinations of the defendant by these mitigation experts who otherwise had not been able to see him. The only suggestion at any time that there was any problem with competency was when these guys came in. The defense counsel had never raised that before. A lot goes on between that point. That may be true, but you just cited to us and to my question that you were basing on defending Judge Lodge's determination based on those very things. That is, his original decision, the hearing two days thereafter. So his competency waiver determination was based on the total package. I'm sorry, Your Honor. I thought I was answering Judge Lodge. But I don't understand how it is. If it goes back to Judge Lodge to determine that he was competent to waive appeal, is defense counsel unable to bring forward the evidence that was presented on the self-representation issue? They didn't proffer experts. They did in the first one, but they didn't in the second one. So what is the body of information that Judge Lodge should be considering at this hearing on appellate waiver? Will it include the information submitted to him on the previous determination or not? I would assume that it would, Your Honor. Okay, fine. I just wanted to make sure you weren't drawing lines around it. No, but I think, Your Honor, in trying to articulate that there is the significance of the period of time that went on between the initial competency determination and the appellate waiver, there is a substantial amount of activity that goes on, including the capital sentencing hearing itself. I wish Mr. Dungan, who certainly didn't conduct himself in the way that standby trial counsel would have, but he did, I think, demonstrate time and again that he met the standard for competency. That's fine. Okay. There's a difference between being intelligent and being competent. You know, I mean, they interplay. But I guess I do have one additional set of questions. If the trial court had found that this defendant was incompetent, the court could have forced counsel upon him, correct? If they had found that he was incompetent to represent himself. Correct. And so, had he been found incompetent, this notice of appeal would be perfectly valid, even if he didn't want it to be filed, because they would be his counsel. I don't think so, Your Honor. I think that still there is both the federal rules of appellate procedure and the case, and I'm forgetting the name of it. We all quoted it in our initial briefing. Jackson says that is a question that is left to the defendant himself. If he's incompetent, so if someone is incompetent to represent himself and incompetent to make a decision about an appeal, what happens? Well, Your Honor, I think in the practical sense of the case, then the defense counsel might have to go to the court and say, you know, we can't discern from him whether or not he wants to file an appeal. No, no, that wasn't my hypothetical. A person who is clearly incompetent to make this decision says, no, please don't appeal. But counsel said, you know, we have some really good issues here, and we're going to go ahead and file this. And you've already been declared not competent to represent yourself, but competent enough to go to trial. Do we let that appeal go forward in the face of, say, a letter from a defendant saying, they filed this, but I, crazy person X, wish they hadn't? Well, then I think you definitely end up with a competency hearing, because that's almost precisely what happened in Reese v. Payton, where there was a cert petition pending at the Supreme Court, and in between, I forget which petition it was, Reese or Payton said, I don't want to do it anymore, and counsel said, oh, I don't think he's competent. And there was a, the Supreme Court itself, of course, couldn't tell what had gone on, and so they remanded to the district court for a competency hearing. And I think that, certainly at that point, we end up with. So it all still seems to revolve, even the jurisdictional question seems to revolve around whether this person should have been actually represented by the lawyer or permissibly represented himself at the stage of the appellate waiver. Well, I think the ultimate question is, how does this court get jurisdiction in a situation where there may be a concern about competence? And I think Mason does answer that question, and that is on habeas review. There are different standards that apply, or different things that can be reviewed on direct appeal and on habeas. And when we, the government at least looks at Mason and looks at really what was not really any meaningful analysis as to why the court had jurisdiction, but the focus language seemed to be that this was truly his last appeal. And the government in no way would want to suggest that this could not in any way ever be appealed, or not appealed, reviewed on appeal. Can I just ask that question? On 2255, what would be the posture then of all of these arguments? Of all of these arguments in terms of competence? On a 2255 petition, certainly essentially the next friend lawyer petition would be one that would raise the issue of competency. And then what we don't have, what we wouldn't have, and frankly I think what the government thinks that Mr. Duncan, whether he now wishes to somehow have these matters reviewed or not, has missed his opportunity to do, is on direct appeal in any way have reviewed the evidentiary rulings by the court, unless they are otherwise implicated in some sort of constitutional concern that you get on habeas. And the government's view, Your Honors, and we absolutely agree with the court that it would be problematic if there were no way in any sort of review for Mr. Duncan's sentence not to be reviewed. And I think frankly the court, the district court, was very concerned all the way along and uncomfortable with the fact that this individual wanted to proceed pro se. It was the district court that raised the concerns about competency, not defense counsel. It was the district court that decided to have the hearing to determine whether he waived his appeal even after it received the letter from Mr. Duncan. He was the one that was concerned about whether or not this Mr. Duncan was competent. Doesn't that actually make the case worse, though, for the government? Because if the judge was concerned enough about the issue, you look at De Plany or however you say it, de Kaplany, however, he should, sua sponte, have ordered a competency hearing as to the ability of this defendant, his competency, to decide whether to appeal or not. I think the judge, his concern was he wanted to examine the issue again and look at it again and determine whether anything had changed. Because certainly by November of 2008, the judge had an even longer body of time than he had been with this defendant, and again, this is a judge who at the time had been on the bench for 46 years. I have a lot of respect for Judge Lodge. This has nothing to do with him per se. It really gets back to whether, as the counsel for Mr. Duncan indicated here, is this structural? I mean, the reality is Judge Lodge wasn't cross-examining these people. He wasn't cross-examining. You weren't cross-examining their experts before him to bring all of the information into play that you would have in a competency hearing. I respect the fact that Judge Lodge thought what he was doing was correct. I don't doubt that. Our role here is to see whether this man's competency, which seems to underlie so much of this whole thing, can be whether we can make a determination even about our own jurisdiction without considering that question and whether once doing that we can say that the judge's decisions, based upon basically a soliloquy where he talks about all that he's considered, is the same as or certainly constitutionally sufficient to equate to a competency hearing, a full-blown competency hearing. In our position, respectfully, this court cannot undirect appeal but could on habeas, and the government would not. We wanted to be clear that our position is not that there would never be any kind of review, not undirected appeal for the very important Article III and constitutional reasons that we raised in the introductory part of our opening, not the introductory part, the first half of our opening brief. Thank you, counsel. And do you have some rebuttal time? What I'd like you to address, among whatever else you want to address, is why wouldn't the court have to wait for a 2255? Your Honor, I've been doing federal criminal law and federal habeas for more than 30 years, and listening to the argument about the heater this morning, I'm sure I made the right career decision. I think this may be the first time I've ever heard that there's a preference for doing things in 2255 that could be done on direct appeal. The usual rule is 2255 is for those things that can't be done on direct appeal. It's a collateral attack, and usually if something could be done on direct appeal, you can't do it in a 2255. Well, that's their point, though. I mean, their argument is it can't be done on appeal because the defendant is not represented by counsel and did not appeal. I mean, that's the long and the short of it. And the 2255 is that's wrong because he was incompetent all along and should never have been put in that position. And counsel would have, should have, could have, would have, could have, should have brought an appeal because they should have been represented all along. So that's, I think, where they get to why it should be. I understand, Your Honor, and I think all three members of the panel mentioned something about the circularity of that argument, and I don't know that there's anything I can really add to that. Unless the Court has other questions about that, I would submit. Okay. We thank all counsel for very helpful arguments in this obviously very difficult and challenging case. And the case is submitted. Thank you. We stand adjourned for the morning session. Thank you. All rise.
judges: Graber, Fisher, Smith M.